IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL CHARLES BIRD, Sr., *pro se*,

    Appellant,      *

    v.      *      Civil Action No. RDB-16-3743
                                                  Bankruptcy Case No. 13-28238

SPECIALIZED LOAN SERVICING      *
LLC, as servicing agent for
THE BANK OF NEW YORK      *
MELLON TRUST COMPANY,
N.A. FKA THE BANK OF NEW      *
YORK TRUST COMPANY, N.A.
as successor to JPMORGAN CHASE      *
BANK, as trustee for MORTGAGE
ASSET-BACKED PASS-THROUGH      *
CERTIFICATES, SERIES 2002-RP2,
     *

    Appellee.

*    *    *    *    *    *    *    *    *    *    *    *    *

## **MEMORANDUM OPINION**

The *pro se* Appellant Paul Charles Bird, Sr. ("Appellant" or "Bird") appeals the November 17, 2016 Order of United States Bankruptcy Chief Judge Nancy V. Alquist granting the Motion for Relief from Automatic Stay (ECF No. 2-1) of Appellee Specialized Loan Servicing, LLC, as servicing agent for The Bank of New York Mellon Trust Company, N.A. FKA The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Mortgage Asset-Backed Pass-Through Certificates, Series 2002-RP2, its assignees and/or successors in interest ("Appellee" or "The Bank of New York Mellon") in this Chapter 7 Bankruptcy proceeding. As discussed *infra*, this appeal concerns Appellee The Bank of New York Mellon's right to enforce a mortgage note as to real property co-owned

by Appellant Bird. Bird has filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Maryland and now appeals Chief Judge Alquist's Order lifting the bankruptcy stay so that Appellee may proceed with foreclosure on Bird's real property. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a), as Bird's appeal arises from a final order entered by the United States Bankruptcy Court for the District of Maryland, and is brought pursuant to Local Rule 404.1(a) (D. Md. 2016). Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019(b)(3); *see also* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, the November 17, 2016 Order of United States Bankruptcy Chief Judge Nancy V. Alquist is AFFIRMED.

## BACKGROUND AND PROCEDURAL HISTORY

On June 8, 1990, the *pro se* Appellant Paul Charles Bird, Sr. ("Appellant" or "Bird") and Brenda Lee Armstrong[1] executed a promissory note ("Note") secured by a deed of trust ("Deed") in favor of Union Federal Savings Bank ("Union Federal") in the amount of $111,481.00 to finance the purchase of real property located at 3416 Hopkins Avenue, Baltimore County, Maryland 21227 (the "Subject Property"). Note, pp. 9-10, ECF No. 7-1; Deed, pp. 15-18, ECF No. 7-1. The Deed was recorded among the Land Records of Baltimore County in Liber 8504, folio 533. *Id.*

On August 26, 1996, Union Federal assigned the Note to the Secretary of the United States Department of Housing and Urban Development ("HUD"), and the assignment was

---

[1] Appellant Bird co-signed the Note and co-owns the Subject Property with Armstrong.

2

recorded among the Land Records of Baltimore County at Liber 11787, folio 097. HUD Assignment, pp. 19-20, ECF No. 7-1. Subsequently, on October 27, 1997, an *allonge* to the Note was executed by HUD to Ocwen Federal Bank, FSP ("Ocwen"). Allonge, p. 13, ECF No. 7-1.[2] HUD assigned the Deed to Ocwen that same day, and the assignment was recorded among the Land Records of Baltimore County in Liber 12679, folio 507. Assignment, pp. 21-22, ECF No. 7-1.

On November 15, 2000, Ocwen assigned the Deed to JP Morgan Chase Manhattan Bank as trustee c/o Residential Funding ("JP Morgan Chase"), and that assignment was recorded among the Land Records of Baltimore County at Liber 23237, folio 028. Assignment, pp. 23-24, ECF No. 7-1. On that same day, Ocwen executed an *allonge* that contained an open indorsement. Allonge, p. 14, ECF No. 7-1. Subsequently, on December 20, 2000, Ocwen executed a "lost note affidavit"[3] to Homecomings Financial Network ("Homecomings"), which provides as follows:

> That the Note, a copy of which is attached hereto as "Exhibit A," executed by PAUL CHARLES BIRD BRENDA LEE ARMSTRONG in the original principal sum of $111,481.00, payable to the order of UNION FEDERAL SAVINGS BANK was lost and/or destroyed and neither the affiant herein nor, to the best of affiant's knowledge, any of the directors, officers, or employees of Ocwen have any knowledge of the location or whereabouts of said Note and the related endorsements and, to the best of affiant's knowledge

---

[2] An *allonge* is a paper attached to a promissory note on which the parties write an indorsement, if there is no room on the instrument itself. *See Milestone v. David*, 555 S.E.2d 163 (2001); U.C.C. § 3–202(2).

[3] As discussed *infra*, a lost note affidavit is an instrument used to establish a party's right to enforce a note even without possession of the original instrument. *See Anderson v. Burson*, 424 Md. 232, 252 (2011). In Maryland, a lost note affidavit is necessary to verify the existence of the original note and to establish its loss by proof that an unsuccessful search was made in the places where it was most likely to be found. *See Brashears v. State of Maryland*, 58 Md. 563 (1882). Maryland Courts routinely accept lost note affidavits to establish a party's right to enforce a promissory note. *Howes v. Wells Fargo Bank*, No. ELH-14-2814, 2015 WL 5836924, at *38 (D. Md. Sept. 30, 2015) (citing *Anderson*, 424 Md. at 238).

3

after inquiry and investigation, said Note has not been paid, satisfied, transferred, assigned, pledged, or hypothecated in any way.

NOW THEREFORE, for and in consideration of Homecomings Financial Network, Inc. ("Homecomings") and its successors and/or assigns, accepting this Lost Note Affidavit and Indemnification Agreement in lieu of the original Note and the related endorsements, Ocwen does hereby agree to defend, indemnify and hold harmless Homecomings, its respective transferees and their respective assigns, officers, directors, employees, agents, attorneys and representatives (collectively, the "Indemnified") from and against any and all loss or damage, together with all reasonable costs, charges, expenses (whether or not a lawsuit is filed) (collectively the "Loss") incurred by reason of any claim, demand, suit, cause of action or proceeding by a third party arising out of the Indemnified's inability to enforce the Note according to its terms or the inability to receive any related insurance proceeds due to the lack of an original Note and/or the related endorsements or any claim of ownership by a third party or negotiation or attempted negotiation of the original Note by a third party; provided however, Loss shall not include indirect or consequential damages. Ocwen shall pay any such Loss upon demand provided that Ocwen is notified of any such Loss in writing at the following address: 1675 Palm Beach Lakes Blvd, West Palm Beach, FL 33401; Attention: Secretary; with copy to 1665 Palm Beach Lakes Blvd, West Palm Beach, FL 33401; Attention: Arthur J. Castner; and further provided that Ocwen is given full opportunity to direct or assist, at Ocwen's option, the defense or settlement of any such Loss. Ocwen does hereby agree that should the original Note ever be found by it, it will promptly notify Homecomings and upon receipt by Ocwen of the Note, will endorse to Homecomings, or its designee without recourse such original Note and promptly forward said Note to Homecomings or its designee.

Executed this 20th day of December, 2000.
OCWEN FEDERAL BANK FSB
By: /s/ _____
Karen Kettle
Servicing Officer

*See In re Bird*, No. 03-52010-JS, 2007 WL 2684265, at *1 (Bankr. D. Md. Sept. 7, 2007). On January 3, 2002, through its servicer, Fairbanks Capital Corp. ("Fairbanks"), Homecomings executed a lost note affidavit to Homecomings' Substitute Trustees, Howard N. Bierman, Esq., Jacob Geesing, Esq., and Carrie Ward, Esq. *Id.* at 2.

On February 6, 2003, Bird filed a Chapter 13 Bankruptcy petition (Case No. 03-52010-JS) in the United States Bankruptcy Court for the District of Maryland.  *Id.*  Subsequently, Fairbanks filed a secured claim in the amount of $41,504.15 [Claim 1], representing past due arrearage on the Deed.  *Id.*  Bird filed an objection to the secured claim, arguing that "the secured Proof of Claim [was] incorrect as the records and payment history [in his possession] dispute[d] the arrearage amount filed in the Claimant's Proof of Claim."  *Id.*  Via Order dated September 29, 2003, the Bankruptcy Court sustained Bird's objection, but subsequently granted Homecomings' motion for reconsideration of that Order and scheduled a hearing on Bird's objection.  *Id.*

Prior to the Bankruptcy Court's hearing, Bird filed two separate complaints for damages against Homecomings (Adversary Proceeding Nos. 03-5833-JS & 04-1145-JS), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  *Id.*  Bird's first complaint was dismissed on the ground that proper service had not been made, and Homecomings filed an answer and motion to dismiss as to the second complaint.  *Id.*  Additionally, on September 22, 2004, Homecomings filed a Motion for Relief from Automatic Stay against Bird and Armstrong as co-Debtors, "in which it claimed to be owed $145,025.55, representing unpaid postpetition arrearages dating from August 1, 2004."  *Id.*  In a *pro se* response in opposition Bird argued, *inter alia*, "that the lost note affidavit submitted by Homecomings was not sufficient evidence of the fact that Homecomings was the holder of the promissory note."  *Id.*

A hearing on all pending matters was conducted on December 13, 2005 before Judge Russell A. Eisenberg, formerly of the United States Bankruptcy Court for the Eastern

5

District of Wisconsin, sitting by designation. *Id.* "At the hearing, the parties reached a global settlement of their differences," and Homecomings agreed, *inter alia*, "to produce evidence demonstrating satisfactory title to the promissory note within 30 days." *Id.* at 3. The parties planned to submit a Settlement Order to the Bankruptcy Court within two days, but no Order was submitted. *Id.* In April of 2016, Bird filed two more objections to Claim 1, arguing that "Homecomings had failed to produce any evidence to support a chain of title, as required by Judge Eisenberg," and "that Homecomings was not a *bona fide* holder of the note." *Id.* The Bankruptcy Court scheduled a second hearing on Bird's Objections. *Id.*

"On June 15, 2006, JP Morgan [Chase] filed Claim [ ] 2, which amended Claim [ ] 1 by substituting itself as the claimant in place of Homecomings and by increasing the amount claimed from $41,504.15 to $138,796.80.7" *Id.* On that same day, JP Morgan Chase amended the Motion for Relief from Stay by substituting itself for Homecomings as the movant. *Id.* "At the hearing, Bird agreed that JP Morgan [Chase] was the true claimant." *Id.* "Marie T. McDonnell, a witness for Bird, articulated the chain of title that was evidenced by the documents admitted into evidence at trial." *Id.* "She stated (1) that because the first *allonge* contained a blank endorsement, it was unknown who received the note; (2) because the second *allonge* was undated, its date of execution could not be determined; and (3) that there were problems associated with the timing of the lost note affidavit in favor of Homecomings after Ocwen's assignment to JP Morgan [Chase]." *Id.* Additionally, in a post-hearing memorandum, "Bird presented two arguments: (1) that JP Morgan [Chase] had not filed a lost note affidavit or any other document evidencing its right to enforce the note; and (2) that although the deed of trust and the *allonge* were executed the same day, Ocwen

6

intended to bifurcate the note from the deed of trust because the two documents were signed by two different officers and the *allonge* was executed in blank." *Id.*

In a written opinion issued after the hearing, Judge James F. Schneider of the United States Bankruptcy Court for the District of Maryland held that Claim 1 had been improperly filed, but that Bird's objection to Claim 1 was moot because "the parties [ ] agreed that JP Morgan [Chase] [was] the proper party asserting the secured claim." *Id.* at 4. Accordingly, Judge Schneider allowed the secured claim of JP Morgan Chase in the full amount of $138,796.80, plus accrued amounts that had come due postpetition since the claim was filed. *Id.* Additionally, Judge Schneider held that "a valid assignment occurred from Ocwen to JP Morgan [Chase]." *Id.* Judge Schneider explained that "[t]he Assignment of Deed of Trust expressly assigning the note to JP Morgan [Chase], coupled with JP Morgan [Chase's] possession of the *allonge* with the blank indorsement confirm[ed] that a transfer of the deed of trust and the note took place in November 2000." *Id.* "The lost note affidavit sworn under oath was sufficient to prove the existence and validity of the note, regardless of its recipient" and "[t]he fact that it was given to Homecomings rather than to JP Morgan [Chase] [was] of no moment." *Id.* at 5. Judge Schneider further concluded that "[t]he later production of documents that evidenced the chain of title [was] *prima facie* evidence of a properly-filed proof of claim." *Id.* "The Court note[d], however, that on August 13, 2007, the Chapter 13 trustee filed a line of completion of case which indicated that the debtor [Bird] ha[d] been discharged." *Id.* at 5.

Subsequently, on June 21, 2012, the JP Morgan Chase successor entity assigned the Note to The Bank of New York Mellon Trust Company, National Association FKA The

7

Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Mortgage Asset-Backed Pass-Through Certificates, Series 2002-RP2, its assignees and/or successors in interest ("Appellee" or "The Bank of New York Mellon").

On October 28, 2013, Bird commenced the present Chapter 7 Bankruptcy proceeding by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701 *et seq*. Appellee's App., p. 86, ECF No. 7-1. Bird filed an initial adversary complaint and subsequently amended that complaint, again claiming, *inter alia*, that several of his creditors lacked standing to pursue their claims as to his real property. *Id.* at pp. 88-112. Subsequently, Chief Judge Nancy V. Alquist of the United States Bankruptcy Court for the District of Maryland granted the secured creditors and Substitute Trustees' Motion to Dismiss the Amended Complaint, holding that the issues raised "pertain to rights of [Bird's] lenders to execute on their security interests," and that these issues "were fully and finally adjudicated in [Bird's] 2003 Bankruptcy Case." *Id.* at p. 129.

Bird subsequently appealed Chief Judge Alquist's Order to this Court. On May 20, 2015, the Honorable George L. Russell, III of this Court, in Case No. GLR-15-1326, adopted the Bankruptcy Court's findings and conclusions, and dismissed Bird's adversary action with prejudice. Appellee's App. at p. 131, ECF No. 7-1. Bird subsequently appealed Judge Russell's Order to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit affirmed the Judgment of this Court in a one-page *per curiam* opinion dated October 22, 2015. *Id.* at pp. 132-138. Following entry of the Fourth Circuit's Judgment, The Bank of New York Mellon filed a Motion for Relief from the Automatic Stay in the pending Bankruptcy Action so that it could continue foreclosure proceedings in state court.

Appellee's App. at 3-5, ECF No. 7-2.  By this time, two foreclosure actions had been filed against Bird in the Circuit Court for Baltimore County, Maryland.  The first case, Civil Action No. 03-C02-000527, was dismissed without prejudice due to changes in Maryland state law on potential loss mitigation.  *Id.* at 77-80.  Subsequently, a second foreclosure action was filed, Civil Action No. 03-C-13001774), and that case was automatically stayed upon Bird's filing his Chapter 7 bankruptcy petition in the instant case.  After a hearing on the Motion, Chief Judge Alquist granted Appellee's Motion for Relief from the Automatic Stay via Order dated November 17, 2016 (ECF No. 2-1).  On that same day, Bird filed the instant appeal of that Order.

## **STANDARD OF REVIEW**

This appeal is brought pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure.  On appeal from the United States Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo. In re Merry–Go–Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  "Under the clearly erroneous standard, if the bankruptcy court's factual findings are plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if it would have weighed the evidence differently." *In re Frushour*, 433 F.3d 393, 406 (4th Cir. 2005) (citing *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)).  "Absent exceptional circumstances, an appellate court will not consider an issue

raised for the first time on appeal." *Levy v. Kindred*, 854 F.2d 682, 685 (4th Cir. 1988) (citing *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir. 1976)). A United States District Court may affirm, modify, or reverse a Bankruptcy Judge's order, or remand with instructions for further proceedings. *See Fed. R. Bankr. P.* 8013; s*ee also In re White*, 128 F. App'x. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson*, 2006 U.S. Dist. LEXIS 87622, at *6, 2006 WL 3498411 (D. Md. Dec. 4, 2006).

## ANALYSIS

I.   Appellant Bird Has Failed to Designate the Record On Appeal, As Required By Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure

As an initial matter, Appellee argues that Bird's appeal should be dismissed because he has failed to properly designate the record, in violation of Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure.[4]   Appellee's Br., ECF No. 7. When a partial record has been filed in this Court, this Court may "dismiss the appeal for non-compliance with Bankruptcy Rule 8009 after giving the appellant an opportunity to explain the non-compliance and upon considering whether the non-compliance had prejudicial effect on the other parties." *See* Local Rule 404.2 (D. Md. 2016). The United States Court of Appeals for the Fourth Circuit has held that "[b]efore dismissing an appeal . . . [a district court] must take at least one of the following steps: (1) make a finding of bad faith or negligence; (2) give the appellant notice or an opportunity to explain the delay; (3) consider whether the delay had

---

[4] Additionally, Appellee objects that Appellant has failed to file a proper Opening brief. While Appellant has filed an Opening brief, that brief was not filed in this Court, but rather was filed as an attachment to the Notice of Appeal filed in the Bankruptcy Court. *See* Notice of Appeal, ECF No. 1. Appellee contends that Appellant's Opening brief only appears in this Court's record because the Bankruptcy Court transmitted a portion of the record of proceedings before that Court, and Appellee ascertained that Appellant's brief was attached to the Notice of Appeal filed in the Bankruptcy Court. Appellant also filed a Reply brief (ECF No. 8). However, as explained herein, there is no merit to the arguments raised in either brief.

10

any possible prejudicial effect on the other parties; or (4) indicate that it considered the impact of the sanction and available alternatives." *In re SPR Corp.*, 45 F.3d 70, 72 (4th Cir. 1995). In this case, it is not clear that Appellant's procedural failure was unduly prejudicial to the Appellee. Appellant is proceeding *pro se,* and Appellee was able to timely designate the record. Consequently, this Court will not dismiss this appeal on procedural grounds. However, for the reasons discussed herein, Appellant's arguments on appeal are completely without merit.

II.     The Bank of New York Mellon's Right to Enforce the Note Has Been Previously Established

Appellant asserts that United States Bankruptcy Chief Judge Alquist's November 17, 2016 Order is "void due to [Appellee's] clear lack of standing and [the] court's lack of jurisdiction." Appellant's Br., p. 5, ECF No. 1. Bird claims that Appellee "failed to provide a complete, unbroken chain of title, and failed to bring forward the original note prior to filing its motion" and "clearly failed to demonstrate any standing to seek relief from the stay," and that his due process rights have been violated. *Id.* at 6-9. However, this argument has already been rejected by the United States Bankruptcy Court for the District of Maryland, and on appeal to this Court and the United States Court of Appeals for the Fourth Circuit.

The doctrine of *res judicata* bars Appellant from asserting these claims. In Maryland, *res judicata* "bars a party from re-litigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 f.3d 345, 355 (4th Cir. 2004)). This doctrine applies when (1) "the parties in the present litigation are the same or in privity with the parties in the earlier dispute"; (2) "the claim presented in the current action is identical to the one

11

determined in the prior adjudication"; and (3) "there has been a final judgment on the merits." *Id.* at 162 (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)).

Judge James F. Schneider of the United States Bankruptcy Court for the District of Maryland has already determined that JP Morgan Chase has authority to enforce its security interest in the Subject Property. Appellee's App., pp. 55-68, ECF No. 7-1; *see In re Bird*, No. 03-52010-JS, 2007 WL 2684265, at *1 (Bankr. D. Md. Sept. 7, 2007). As successor to JP Morgan Chase, Appellee The Bank of New York Mellon is in *privity* with JP Morgan Chase. *See Jones v. HSBC Bank USA*, No. RWT-09-2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (finding successor trustee was in *privity* with prior holders of note because they "share a mutuality of interest"). As discussed *supra*, Bird previously challenged the chain of title established by JP Morgan Chase in his 2003 Chapter 13 Bankruptcy proceedings before Judge Schneider, who found that the record of the Note assignments showed a proper chain of title and established that JP Morgan Chase was a valid claimant. *Id.* at pp. 65-67. The issue was again addressed by Bankruptcy Chief Judge Alquist, who again confirmed lender JP Morgan Chase's right to execute on its security interest, stating that the issues "were fully and finally adjudicated in the Debtor's 2003 Bankruptcy Case." *Id.* at p. 129. Judge Russell of this Court adopted Chief Judge Alquist's Findings and Conclusions, and dismissed Appellant's Amended Complaint with prejudice. *Id.* at p. 131. The United States Court of Appeals for the Fourth Circuit subsequently affirmed Judge Russell's Order. *Id.* at 132-138. Appellant's present claim is based on the same arguments presented and adjudicated in these previous actions. For this reason, Appellant is barred from re-litigating this claim.

Even if Appellant's claims were not barred under the doctrine of *res judicata*, Appellant has failed to demonstrate that Appellee lacks standing or otherwise lacks authority to enforce its security interest in the Note. Indeed, Appellant conceded in the 2003 Chapter 13 Bankruptcy proceeding that JP Morgan Chase was the true claimant of the Note. Appellee's App., p. 62, ECF No. 7-1. As discussed *supra*, JP Morgan is in *privity* with the Appellee, who in turn has authority to enforce its security interest in the Note. Appellant does not identify any authority stating otherwise.

## **CONCLUSION**

For these reasons, Chief Judge Alquist's Order was not clearly erroneous, and she properly concluded that cause existed to grant Appellee relief from the automatic bankruptcy stay. Accordingly, having considered the merits of this appeal, the November 17, 2016 Order of United States Bankruptcy Chief Judge Nancy V. Alquist (Bankruptcy Case No. 13-28238) is AFFIRMED.

A separate Order follows.

Dated:    March 15, 2017

                                                   /s/
                                  Richard D. Bennett
                                  United States District Judge